******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# ALEXANDER GAYNOR *v.* LAURA GILMAN
## (AC 47863)

Elgo, Suarez and Norcott, Js.

*Syllabus*

The plaintiff appealed from the trial court's judgment denying his application for a prejudgment remedy of replevin with respect to a dog that the parties obtained when they were in a romantic relationship. After the parties broke up, they shared possession of the dog until approximately eighteen months later, when the defendant unilaterally determined that the plaintiff would no longer be allowed to see the dog. On appeal, the plaintiff claimed, inter alia, that the court improperly determined that, in order to prevail on his application, he was required to demonstrate that his possessory interest in the dog was superior to that of the defendant. *Held*:

The trial court properly concluded that it could not order shared possession of the dog, as the plain and unambiguous language of the statute (§ 52-515) that governs replevin proceedings in Connecticut does not provide for shared possession of a chattel and, even if it did, the plaintiff did not seek shared possession of the dog in his application for a prejudgment remedy.

The plaintiff's claim that the trial court erred when it required him to establish a superior possessory interest in the dog to prevail in his replevin action was unreviewable, as this court's review of the entirety of the record revealed that the question of who had the superior possessory interest in the dog was the focal point of the proceedings and led this court to conclude that the plaintiff prompted the error he now raises on appeal by suggesting to the trial court, in his prehearing memorandum, that this question was germane to the analysis, presenting evidence regarding and attempting to prove that his interest in the dog was superior to the defendant's, and arguing, through counsel, that he had done so, and, when a party abandons a claim or argument before the trial court, that party waives the right to appellate review of such claim because a contrary conclusion would result in an ambush of the trial court.

Argued January 20—officially released July 21, 2026

*Procedural History*

Application for a prejudgment remedy of replevin, and for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and tried to the court, *Vizcarrondo, J.*; judgment denying the application, from which the plaintiff appealed to this court. *Affirmed.*

*Anthony L. Cenatiempo*, with whom, on the brief, was *Norman A. Roberts*, for the appellant (plaintiff).

*Christopher G. Winans*, for the appellee (defendant).

*Opinion*

NORCOTT, J. The plaintiff, Alexander Gaynor, appeals from the judgment of the trial court denying his application for a prejudgment remedy of replevin against the defendant, Laura Gilman, by which he sought to secure possession of a dog named Buzz. On appeal, the plaintiff claims that the court improperly determined that to establish the third element of his prejudgment claim for replevin, namely, that he had the right to immediate possession of Buzz, he was required to demonstrate that his possessory interest in Buzz was superior to that of the defendant. He further claims that, in adjudicating his application, the court erroneously concluded that it could not order shared possession of Buzz.[1] We affirm the judgment of the trial court.

The following facts, as found by the court or that are otherwise undisputed in the record, and procedural history are relevant to our resolution of this appeal. The plaintiff and the defendant were involved in a romantic relationship from 2014 to 2022. They began living together in 2019 and, in January 2020, they adopted Buzz, a male chihuahua mix dog. The parties shared equally the cost to acquire Buzz and also shared the expenses related to his care. They both took care of Buzz and loved him "jointly."

The parties ended their relationship in June 2022, and the defendant moved out of their shared apartment. They decided to continue to share Buzz, however, and they did so by regularly exchanging him on mutually agreed upon dates. In October 2023, after sharing Buzz with the plaintiff for approximately eighteen months following

---

[1] The plaintiff advances this second claim as part of his argument in support of his claim that the court "erred when it required [him] to establish a superior possessory interest in a replevin action."

the breakup, the defendant unilaterally determined that she would "no longer allow [the plaintiff] to see Buzz" and she has kept him for herself. Despite his repeated demands for the return of Buzz, the plaintiff has not seen Buzz since then.

On November 22, 2023, in anticipation of commencing litigation to resolve the parties' dispute over Buzz, the plaintiff filed with the court an application for a prejudgment remedy. The application sought "[t]o replevy the plaintiff's dog 'Buzz' a male chihuahua mix aged approximately [three] years . . . ."

The court, *Vizcarrondo, J.*, held an evidentiary hearing with respect to the plaintiff's application on July 23 and 25, 2024. In advance of that hearing, and in accordance with the court's order that they do so, the parties filed prehearing memoranda that described the substance of their claims and/or defenses and identified the issues in dispute. In the plaintiff's July 22, 2024 "trial memorandum," he stated that "[t]his is a probable cause hearing seeking replevin of a dog" and that, inter alia, **(1)** "[a]n action for replevin can be maintained where the plaintiff claims a general or special property interest," **(2)** "[a] replevin action with joint title holders involves a comparison of the superiority and inferiority of competing rights to possess the animal," **(3)** "[a]n action for replevin can be maintained where the parties have had joint possession of items," **(4)** "dogs are deemed to be personal property," **(5)** "[a]n action can be maintained for replevin of a dog," and **(6)** "the documents provided by both parties establish joint ownership of Buzz . . . ." As support for the first listed proposition, the plaintiff cited to General Statutes § 52-515. As support for the second listed proposition, the plaintiff cited to this court's decision in *Angrave* v. *Oates*, 90 Conn. App. 427, 876 A.2d 1287 (2005). Further, the plaintiff "contend[ed] that, in this case, as the parties had been doing prior to the commencement

of this action, the parties should continue to enjoy joint possession of Buzz . . . ."

The defendant's July 22, 2024 "prehearing memo[randum]," quoting directly from this court's decision in *Angrave* v. *Oates*, supra, 90 Conn. App. 430, states that "[a] replevin action is not a contract action and, thus, it is not within the court's power to determine which party has superior title to the animal . . . . [A] replevin action . . . involves a comparison of the superiority and inferiority of competing rights to possess the animal." (Internal quotation marks omitted.) Thus, the parties agreed, and both represented to the court, that, in accordance with *Angrave*, a comparison of their competing rights to possess Buzz should be incorporated into its analysis as to whether there was probable cause to sustain the validity of the plaintiff's claim for replevin.

At the hearing, the court admitted exhibits into evidence and heard testimony from seven witnesses, including the plaintiff and the defendant.[2] The plaintiff testified that he and the defendant adopted Buzz together, that he cared for and paid his share of expenses related to Buzz while his relationship with the defendant was ongoing, and that he continued to do so after the relationship ended. He maintained, however, that he had possession of and exclusively cared for Buzz "over fifty extra days than [the defendant] did since [they] broke up . . . ." Specifically, the plaintiff testified that the defendant took frequent vacations and left Buzz with him for extended periods of time on several occasions. When asked by his counsel during his direct examination at the hearing "why [he thinks his] interest in Buzz is superior to [the defendant's]," the plaintiff explained that he "had him more days since we broke up. [The defendant] prioritized her social schedule over taking care of him, and I was the mechanism for facilitating that. It's over a two month difference in time that I had him." The plaintiff's counsel also asked the plaintiff

[2]The defendant testified during the plaintiff's case-in-chief, and also during her case-in-chief, as the only witness on her behalf.

"when you were together . . . why would you think your possessory interest was superior to [the defendant's]," and he responded, "[t]he same reasoning. [The defendant] was, I think in the six months before our breakup, she was gone for about forty-five of those days, a month and a half of six months where I was watching Buzz solely."

The defendant testified that, although both her name and the plaintiff's name were on Buzz's adoption agreement, she "was the main adopter since [she] did all the work to get him." Even so, Buzz was initially registered with the New York City Department of Health and Mental Hygiene in the plaintiff's name only and, at some point thereafter, the defendant's name was added to the registration.[3] When asked by the court whether it was her "position that [the plaintiff] does not have a possessory interest in Buzz . . . that you two do not share Buzz together," the defendant responded that she thought that she had "a superior possessory interest" in Buzz, but she agreed that she was "not denying that [the plaintiff] cared for Buzz . . . and [that they in fact] cared for Buzz together in at least the two years before [they] broke up . . . ." In fact, she later conceded that she thought that the plaintiff did have a possessory interest in Buzz, albeit "[a]t a small degree . . . ." She maintained, nonetheless, that she "took the lead for all of Buzz's care while [they] lived together. [She] researched all of his pet food. [She] made decisions on what food he was going to eat" and that the plaintiff "was [her] boyfriend and he helped [her] walk Buzz when [she] was not home. He . . . paid [her] for some things . . . [they] viewed it as a shared household expense, like [they] did many other things not having to do with Buzz."

The defendant explained that, immediately after the breakup in June 2022, her relationship with the plaintiff was "amicable" and she thought "that it would ease the burden of the change for all our lives . . . to share [Buzz]."

[3] At the time the parties adopted Buzz, they were residing together in New York City. They moved from New York City, with Buzz, to an apartment in Greenwich at the beginning of the COVID-19 pandemic, and they resided there until they broke up.

By October 2023, however, "things between [the defendant and the plaintiff] were extremely argumentative and stressful for [the defendant]," and it had become "very straining for [her] to have any sort of contact with [the plaintiff]." She wanted the plaintiff "out of [her] life" and decided, at that time, that she would no longer be able to share Buzz with him. She testified that she thought she had the right to retain sole possession of Buzz because she "had more interest in [him]" than the plaintiff did.

At the very beginning of the hearing, the court confirmed with counsel for both parties that "this case is a replevin action . . . not a contract action . . . ." The court then inquired as to whether "[t]his is a comparison of the competing possessory interest of the animal," and both counsel agreed that it was. The following colloquy between the court and counsel then ensued:

"The Court: And, as I understand it, there was a four part test . . . from the [*Cornelio* v. *Stamford Hospital,* 246 Conn. 45, 717 A.2d 140 (1998)] decision . . . . The first prong [asks whether] the property [at] issue [is] a good [or a] chattel. No dispute about that.

"[The Defendant's Counsel]: No, there's not.

"[The Plaintiff's Counsel]: No dispute.

"The Court: And I saw that the prehearing [memoranda] suggested that there were no undisputed issues of fact. That doesn't seem to be quite correct. I think we agree that Buzz is a [chattel], so that's agreed.

"The plaintiff has a possessory interest in the subject property. Again, this is not a title determination. So, is there a dispute that both parties lived with Buzz throughout their seven year relationship and cared for Buzz? Such that both have at least a colorable possessory interest in Buzz.

"[The Plaintiff's Counsel]: There is no dispute that the parties both live[d] with Buzz, initially. Then, beginning

in 2022, the dog moved between their respective households.

"So, to answer your question more fully, there is no dispute, I don't believe . . . that the parties both lived with the dog through 2022.

"The Court: Right. Now, that brings the question, who has the superior possessory interest, but there is at least a claim that both parties have a possessory interest in Buzz as they share[d] Buzz throughout the duration of their relationship.

"[The Plaintiff's Counsel]: Correct. . . .

"The Court: And [the plaintiff] . . . at least according to the prehearing memorandum is conceding that the defendant has at least a visitation interest in Buzz. And he would like to establish at least some sort of custodial plan for the dog. Is that correct?

"[The Plaintiff's Counsel]: That's absolutely correct.

"The Court: So, [the plaintiff] is claiming a right to immediate possession, but he is not seeking necessarily exclusive possession of the animal.

"[The Plaintiff's Counsel]: That would be a correct articulation. If the court finds that there has to be exclusive possession in one party or the other, he would claim it would be with him.

"But absent that . . . finding, he would be perfectly satisfied with some arrangement.

"The Court: All right. So then . . . I'm happy to hear you on this issue but it seems to me it's an uphill . . . battle to claim a right to immediate possession."

Throughout the hearing, the court continued to express concerns about the "third prong [of the test set forth in *Cornelio*] which requires the plaintiff to demonstrate a right to immediate possession." Although the court thought that the plaintiff was "reasonably seeking essentially a visitation schedule," it did not "think that that

is permitted under law."[4] Rather, it opined that "[t]his is essentially an all or nothing situation." The following colloquy between the plaintiff's counsel and the court then ensued:

"[The Plaintiff's Counsel]: And I do believe that if [the] parties are in joint owner[ship] of a chattel, that chattel can go back and forth between the parties. And to the extent that this dog is a chattel, it's got a visitation schedule . . . .

"But it is an acknowledgement that a chattel is jointly owned. And this is not a partition action [in which] we're asking that the thing [be] divided or put in one party's hand or another.

"This is an attempt to secure the thing back. In terms of possessory interest, if Your Honor goes down that sort of analytic framework and says, no there is no way that we could possibly move this chattel back and forth, then I think [the plaintiff's] claim to possessory interest is superior . . . .

"The Court: That may be. My question is whether that is a determination I should be making in the [prejudgment remedy] context where there is a concession [that the defendant] has a possessory interest even though the plaintiff in his view is superior.

"So, it's a question of degree [and] whether I should be answering that question at a [prejudgment remedy] hearing."

The court further explained, with respect to the "third prong" of the test set forth in *Cornelio*, that "immediate possession suggests . . . that the other party does not have a possessory interest and/or that unless there is a transfer of possession . . . there might be some loss of the animal in terms of the dog's health and safety [if]

---

[4]The court expressly stated, in this regard, that "this is not a child custody case," and the plaintiff's counsel agreed.

immediate possession were not transferred and thus a [prejudgment remedy] is necessary . . . .[5]

"That's what strikes me by the term immediate possession. And it seems to me that element is undercut if . . . both parties share a possessory interest.

"Although I take [the plaintiff's] position [to be] that if push comes to shove, his possessory interest is superior. But there is not a suggestion that at this point he has an exclusive possessory interest. At least that's not what I understand to be alleged in support of the [prejudgment remedy]. So, I'm having trouble understanding why I should issue a [prejudgment remedy] as opposed to having a full hearing on the merits when ultimately the remedy is that I grant one of these parties exclusive possession of Buzz." (Footnote added.)

The plaintiff's counsel emphasized that the plaintiff "was deprived of possession abruptly" and maintained that "[a]n immediate possessory interest arises out of the fact that this gentleman was deprived of the dog. He did not have access to him. There was no more communication. It was summary. It was final," and the plaintiff's counsel did not "quite agree with the court . . . to the extent that the immediate possessory right has to presume that the other party has no interest." The court then asked, "How does it not presume that if I'm correct in my view that we're not talking about a custody or visitation schedule, that this interest cannot be shared, that one side gets the dog to the exclusion of the other" and posited that "that's why we have prong three [of the test set forth in *Cornelio*]." The plaintiff's counsel later

---

[5]In making this observation, the court noted that "this sort of goes into perhaps a best interest territory which doesn't apply . . . ." Indeed, this court has stated that "[a] claim of replevin does not involve the best interest of the dog, which is a chattel under General Statutes § 22-350 ('[a]ll dogs are deemed to be personal property')." *Angrave* v. *Oates*, supra, 90 Conn. App. 430 n.3. Neither party disputes this on appeal. Cf. *L.B.* v. *C.C.B.*, 77 Misc. 3d 429, 436, 175 N.Y.S.3d 705 (2022) (explaining that New York Domestic Relations Law § 236 (B) (5) (d) (15) requires courts to consider "best interest" of companion animal when awarding possession thereof in context of marital dissolution action).

asserted that "[t]he ultimate issue is who should possess the dog, and who has the superior possessory right."

During her closing argument, the plaintiff's counsel acknowledged the court's concern about prong three of the test set forth in *Cornelio* and posited that, "if [the plaintiff establishes] that [he has] an ownership interest in the dog and [he] unquestionably did that, [he has] a right to immediate possession." She maintained that this right "arises out of his at least probable cause establishment of ownership of the dog or partial ownership of the dog." She then argued that "the four prong test [set forth in *Cornelio*] has really gotten collapsed or conflated . . . by . . . two Superior Court cases into . . . in essence . . . a three prong standard. Does the person have a [colorable] claim to ownership of the . . . dog? Has it been wrongfully withheld? And do they have a right to possession? I think [the plaintiff has] satisfied those three standards."[6] When the court later asked, "[w]hat about the superiority of [possessory interest] claim," the plaintiff's counsel responded, "I think [the plaintiff] can establish superiority," and the following colloquy with the court ensued:

"The Court: Let me just ask this question. . . . [I]s it your position that the [prejudgment remedy] lies if [the plaintiff] establishes that his possessory interest is equal to that of [the defendant]? . . . Or does he have to establish, at least as a probable cause standard, that his will be the superior interest at the end of the day?

"[The Plaintiff's Counsel]: I don't think . . . he necessarily has to establish a superior interest. I think that

---

[6]The plaintiff's counsel had argued during an earlier colloquy with the court that the third and fourth prongs of the test set forth in *Cornelio* had been "somewhat conflated and used together" by Judge Kavenewsky in *Animals R Family, Inc.* v. *Sunrise Assisted Living of Stamford*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-19-5021239-S (July 10, 2019), and that, under that rubric, "[a]n immediate possessory interest arises out of the fact that [the plaintiff] was deprived of the dog. He did not have access to him."

becomes the standard for who ultimately keeps the dog at trial, who had the superior interest. . . .

"The Court: Well . . . don't you have to establish probable cause that [the plaintiff] will prevail on the merits?

"[The Plaintiff's Counsel]: And I believe we have. I believe we have.

"The Court: But to prevail on the merits, you have to demonstrate a superiority of interest, correct?

"[The Plaintiff's Counsel]: I believe that we have to establish those four prongs [set forth in *Cornelio*], and two of them have been conflated. The immediate right to possession . . . has been sort of conflated here as if it means something else."

Thereafter, following a short recess, the court announced in open court its decision denying the plaintiff's application for a prejudgment remedy.[7] The court made the following findings in doing so. The "plaintiff and the defendant adopted the dog together . . . and the credible evidence is that the couple formed one household [and] cared . . . for Buzz and loved Buzz jointly." After the couple broke up, "[they] shared joint custody of Buzz, and they exchanged him upon a mutually agreeable schedule until October of 2023, when the defendant determined, unilaterally, that she would keep Buzz and that she would deny the plaintiff further visitation access." She did so because she wanted "to move on with her life" and "she considered the dog hers, though she concedes that the plaintiff had, and continues to have, great affection for Buzz . . . ." Indeed, the court found that "[t]he plaintiff, without question, loves Buzz and he is heartbroken at the loss of his pet." Ultimately, the court determined "that both parties loved and cared for Buzz in their own way pursuant to their division of labor in the household" and their respective possessory rights in him were "equal."

---

[7] A signed transcript of the court's oral decision has been made part of the record. See Practice Book § 64-1.

The court explained that "[t]he plaintiff . . . seeks a prejudgment remedy in the way of a court order requiring immediate access to Buzz. In seeking that relief, he also concedes that the defendant has a possessory interest in the dog, and he will be content for this court to order an interim visitation schedule pending final adjudication of this matter." The court further explained that, "to prevail on [a] claim for prejudgment remedy of replevin pursuant to [§] 52-515 . . . the plaintiff must establish probable cause that one, the property at issue is a good or chattel; two, the plaintiff has a property interest in the subject property; three, the plaintiff has a right to immediate possession; and four, the defendant is wrongfully detaining the property." It stated that "a replevin action involves a comparison of the superiority or inferiority of competing rights to possess the animal" and determined that the plaintiff's "inability to prove a superior claim is ultimately fatal to the third prong . . . under the replevin standard [set forth in *Cornelio*] in showing an [immediate] right to possession."[8] The court found that, "because Buzz will be awarded to one of the parties exclusively . . . the requirement to show a superior claim is critical" and that "the claims being equivalent, it is not sufficient to demonstrate an equal right to access, because rightly or wrongly, Buzz is [a] chattel not a child, and this court would decline to issue a prejudgment remedy . . . that would do anything less than award exclusive possession to one or the other of the parties." Although the court deemed reasonable the plaintiff's position that he would be satisfied if the court were "to order an interim visitation schedule pending final adjudication of this matter," the court did not agree "that our civil law is sufficiently robust to provide for such relief even on an interim basis. That kind of custody

---

[8]With respect to the other prongs set forth in *Cornelio*, the court found that "[t]here is no dispute that, under Connecticut law, Buzz is a good or a chattel" and also that "[t]here is no dispute that the plaintiff has a property interest in the dog . . . ." Because the court determined that the plaintiff had not sustained his burden of proving probable cause to sustain the validity of the third prong, it did not reach the fourth prong.

and visitation scheme is provided for in the family context, and there it shall remain."

Thus, because the court determined that it was required to order nothing less than exclusive possession of Buzz to one party or the other, it found it "essential to determine a superior interest, which has not been proved here.

"Because the plaintiff cannot demonstrate that third prong of the analysis, [i.e., the right to immediate possession of Buzz], his application fails . . . ."

Thereafter, the plaintiff retained appellate counsel, who timely filed this appeal from the denial of the application for prejudgment remedy[9] on the plaintiff's behalf.[10] Additional facts and procedural history will be set forth as necessary.

Before we address the plaintiff's specific claims, we set forth our standard of review and the general legal principles that are germane to our analysis. "A prejudgment remedy application is brought as a prelude to the filing of a civil action, and is meant to determine whether security should be provided for any judgment ultimately recovered by the plaintiff if he or she is successful on the merits of the civil action." (Internal quotation marks omitted.) *Maefair Health Care Center, Inc.* v. *Noka*, 236 Conn. App. 1, 3 n.4, 346 A.3d 1044 (2025). "As provided for in our prejudgment remedy statutes, General Statutes § 52-278a et seq., '[a] prejudgment remedy means

[9]"The grant or denial of a prejudgment remedy is a final judgment for purposes of appeal pursuant to General Statutes § 52-278*l* (a)." *Maefair Health Care Center, Inc.* v. *Noka*, 236 Conn. App. 1, 2 n.2, 346 A.3d 1044 (2025).

[10]On July 30, 2024, the day before the plaintiff filed this appeal, the plaintiff commenced an action against the defendant. In his four count complaint, he asserted claims for (1) "breach of contract—replevin—§ 52-515," (2) conversion, (3) civil theft, and (4) negligent infliction of emotional distress. That action was tried to the court, *Bothwell, J.*, in March 2026, posttrial briefs were filed on June 1, 2026, and the action remains pending in the Superior Court. See, e.g., *Sullo Investments, LLC* v. *Moreau*, 151 Conn. App. 372, 376 n.3, 95 A.3d 1144 (2014) ("[a]ppellate courts may take judicial notice of files of the trial court in the same or other cases" (internal quotation marks omitted)).

any remedy or combination of remedies that enables a person by way of attachment, foreign attachment, garnishment or replevin to deprive the defendant . . . in a civil action of, or affect the use, possession or enjoyment by [that party] of, his property prior to final judgment . . . . A prejudgment remedy is available upon a finding by the court that there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any defenses, counterclaims or setoffs, will be rendered in the matter in favor of the plaintiff . . . . Proof of probable cause as a condition of obtaining a prejudgment remedy is not as demanding as proof by a fair preponderance of the evidence. . . . The legal idea of probable cause is a bona fide belief in the existence of the facts essential under the law for the action and such as would warrant a man of ordinary caution, prudence and judgment, under the circumstances, in entertaining it. . . . Probable cause is a flexible common sense standard. It does not demand that a belief be correct or more likely true than false.'" *Johnson* v. *Vita Built, LLC*, 217 Conn. App. 71, 83, 287 A.3d 197 (2022).

"As for [the] standard of review [on appeal], [our Supreme Court has instructed that a reviewing] court's role on review of the granting [or denial] of a prejudgment remedy is very circumscribed. . . . In its determination of probable cause, the trial court is vested with broad discretion which is not to be overruled in the absence of clear error. . . . In the absence of clear error, [a reviewing] court should not overrule the thoughtful decision of the trial court, which has had an opportunity to assess the legal issues which may be raised and to weigh the credibility of at least some of the witnesses. . . . [On appeal], therefore, we need only decide whether the trial court's conclusions were reasonable under the clear error standard. . . . [T]he clear error standard in this context is a heightened standard of deference that exceeds the level of deference afforded under the abuse of discretion standard. Therefore, this court will overrule the trial

court's determination on a prejudgment remedy only if we are left with the definite and firm conviction that a mistake has been committed." **(**Citation omitted; internal quotation marks omitted.**)** *Landmark Investment Group, LLC* v. *Calco Construction & Development Co.*, 141 Conn. App. 40, 49–50, 60 A.3d 983 (2013). "Even under this deferential standard, however, our review of a trial court's conclusions regarding questions of law will be plenary." *Johnson* v. *Vita Built, LLC*, supra, 217 Conn. App. 84.

Because the plaintiff's prejudgment remedy application in this case sought to replevy Buzz, we next turn to a discussion of replevin. "Replevin is, and historically has been, a possessory action for the recovery of specific property." **(**Footnotes omitted.**)** 66 Am. Jur. 2d 542, Replevin § 2 (2021). "Since the object of replevin is to determine the right to possession, replevin is available only to one that can establish an entitlement to the property taken or detained, by showing title or a right to possession, and replevin is defeated when a plaintiff has no right to possession of the property." **(**Footnotes omitted.**)** Id., § 11, p. 551. As a possessory action, the focus of a claim for replevin is "on the right of immediate possession, [and] title [is] not . . . the determinative issue." 77 C.J.S. 377, Replevin § 4 (2017). "A plaintiff seeking replevin generally only needs to show a superior right to that of the defendant, but may not rely on the weakness of the defendant's rights." Id., § 23, p. 393; see also *Robinson* v. *Atterbury*, 135 Conn. 517, 519, 66 A.2d 593 (1949) **(**plaintiff must rely on strength of his title rather than on weakness of defendant's and must prove right to immediate possession**)**; *Angrave* v. *Oates*, supra, 90 Conn. App. 430 ("a replevin action . . . involves a comparison of the superiority and inferiority of competing rights to *possess* the animal" (emphasis in original)).

"In Connecticut, replevin proceedings are governed by statute rather than by the rules that apply to common-law actions of replevin. . . . Section 52-515 provides that '[t]he action of replevin may be maintained to recover

any goods or chattels in which the plaintiff has a general or special property interest with a right to immediate possession and which are wrongfully detained from him in any manner, together with the damages for such wrongful detention.'" *Cornelio* v. *Stamford Hospital,* supra, 246 Conn. 49. Thus, in order to prevail on his prejudgment claim to replevy Buzz, the plaintiff was required to establish, under the probable cause standard, that **(1)** Buzz was a good or chattel within the meaning of § 52-515; **(2)** the plaintiff had a "property interest" in Buzz; **(3)** the plaintiff had a right to immediate possession of Buzz; and **(4)** the defendant had wrongfully detained Buzz. See id.

I

We now turn to the plaintiff's claim that, in adjudicating his application, the court erroneously concluded that it could not order shared possession of Buzz. As noted previously in this opinion, the plaintiff has advanced this claim in the form of an argument to support his claim that the court "erred when it required [him] to establish a superior possessory interest in a replevin action." See footnote 1 of this opinion. Our review of the record reveals, however, that this was the primary *claim* the plaintiff made at the hearing regarding his application for prejudgment remedy and that the court understood this to be the case.[11] For ease of discussion, we address this claim first.

The plaintiff argues, in support of this claim, that, although the court deemed reasonable his request that

---

[11]The record reflects that, in acknowledging that the plaintiff was looking "to establish at least some sort of custodial plan for the dog," the plaintiff's counsel agreed with the court that the plaintiff "is claiming a right to immediate possession, but he is not seeking necessarily exclusive possession of the animal" and that, "[i]f the court finds that there has to be exclusive possession in one party or the other, he would claim it would be with him." The plaintiff's counsel later clarified that "I do believe that if parties are in joint owner[ship] of a chattel, that chattel can go back and forth between the parties. And to the extent that this dog is a chattel, it's got a visitation schedule . . . . This is an attempt to secure the thing back. In terms of possessory interest, *if* Your

it enter "essentially a visitation schedule," the court improperly "believed that it was an 'all or nothing' proposition" and that it "was not [as the court concluded] constrained by law from ordering the result [that] it clearly wished to occur." We disagree.

As stated previously in this opinion, replevin proceedings in Connecticut are governed by statute. *Cornelio* v. *Stamford Hospital*, supra, 246 Conn. 49. To this end, § 52-515 explicitly provides that "[t]he action of replevin may be maintained to recover any goods or chattels in which the plaintiff has a general or special property interest with a right to immediate possession and which are wrongfully detained from him in any manner, together with the damages for such wrongful detention."

"The construction of a statute is a question of law subject to de novo review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . .

In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Citation omitted; internal quotation marks omitted.) *Aldin Associates Ltd. Partnership* v. *State*, 230 Conn. App. 223, 240–41, 330 A.3d 613, cert. granted, 351 Conn. 911, 330 A.3d 882 (2025). "We are not in

Honor goes down that sort of analytic framework and says, no there is no way that we could possibly move this chattel back and forth, [*t*]*hen* I think [the plaintiff's] claim to possessory interest is superior . . . ." (Emphasis added.) Indeed, the court expressly "[took the plaintiff's] position [to be] that, *if push comes to shove*, his possessory interest is superior." (Emphasis added.)

the business of writing statutes; that is the province of the legislature. Our role is to interpret statutes as they are written. . . . [We] cannot, by [judicial] construction, read into statutes provisions [that] are not clearly stated." (Internal quotation marks omitted.) *Rider* v. *Rider*, 210 Conn. App. 278, 288, 270 A.3d 206 (2022).

The plain and unambiguous language of § 52-515 does not provide for shared possession of a chattel. Moreover, even if it did, the plaintiff's claim for replevin as alleged in the verified complaint he attached to his application for prejudgment remedy is expressly predicated on § 52-515 and, in his prayer for relief, he sought "[a] temporary order of replevin ordering possession of Buzz to the plaintiff until a final resolution of this action" and damages. The plaintiff did not seek shared possession of Buzz in his application. "It is fundamental in our law that the right of a [party] to recover is limited to the allegations in his [pleading]. . . . Facts found but not averred cannot be made the basis for a recovery. . . . Thus, it is clear that [t]he court is not permitted to decide issues outside of those raised in the pleadings." (Internal quotation marks omitted.) *A Better Way Wholesale Autos, Inc.* v. *Better Business Bureau of Connecticut*, 221 Conn. App. 1, 12, 299 A.3d 1200, cert. denied, 348 Conn. 919, 303 A.3d 1194 (2023).

For these reasons, we conclude that the only relief the court could have afforded the plaintiff, had the court found probable cause to sustain the validity of the plaintiff's replevin claim, which it did not, would have been the unqualified possession of Buzz pending a final resolution of the plaintiff's action and damages for his unlawful detention. It matters not that the court may have thought that the plaintiff's shared possession proposal seemed reasonable because the court was constrained by law from entering such an order.

II

We now turn to the plaintiff's claim that "the trial court erred when it required [him] to establish a superior

possessory interest in a replevin action." In support of this claim, the plaintiff argues that the only elements he had to establish to prevail on his prejudgment remedy application seeking replevin of Buzz derive from § 52-515 and are set forth in our Supreme Court's decision in *Cornelio* v. *Stamford Hospital*, supra, 246 Conn. 49. He maintains that, by focusing on whether the plaintiff had a superior possessory interest in Buzz, the court disregarded "the *Cornelio* test for the third prong . . . [and improperly] relied upon [this court's decision in] *Angrave* v. *Oates*, [supra], 90 Conn. App. 427," instead.[12] More specifically, he argues that the court relied on "[d]icta in *Angrave* [that] states: 'this is a replevin action, which involves a comparison of the superiority and inferiority of competing rights to possess the animal. . . . Relying upon this dicta, the . . . court noted that it was bound to compare the superiority and inferiority of competing rights to possess Buzz throughout its opinion and specifically noted that the plaintiff failed to establish a superior possessory interest." (Citations omitted.)

According to the plaintiff, the "court misinterpreted the holding of *Angrave*" and "erred when it relied upon the 'superior possessory interest' language as determinative of the third prong of a replevin claim . . . ." The plaintiff maintains that "[h]e was only required to dem-

[12] The court did not expressly reference *Angrave* in rendering its decision. The court did, however, state that "a replevin action involves a comparison of the superiority or inferiority of competing rights to possess the animal," which is nearly identical to the language this court used in *Angrave*. See *Angrave* v. *Oates*, supra, 90 Conn. App. 430. Moreover, the court's statement embodies, nearly verbatim, the assertions by both the plaintiff and the defendant in their respective prehearing memoranda that *Angrave* stands for this proposition. We determine, on the basis of our plenary review of the court's decision and the circumstances surrounding its making, that *Angrave* informed the trial court's analysis. See, e.g., *Fredo* v. *Fredo*, 234 Conn. App. 106, 121–22, 343 A.3d 525 (2025) ("[T]he construction of [an order or] judgment is a question of law for the court . . . [and] our review . . . is plenary. . . . The interpretation of [an order or] judgment may involve the circumstances surrounding [its] making. . . . Effect must be given

onstrate a right to immediate possession of Buzz which he clearly did under the facts of this case given the law governing the chattel at issue."

Before the trial court, however, the plaintiff claimed that he had established that his possessory interest in Buzz was superior to that of the defendant and that, if the court would not issue an order of shared possession, which was his primary claim, then it should award him possession of Buzz on the basis of that superior possessory interest. See footnote 11 of this opinion. This was consistent with his express statement in his prehearing memorandum that "[a] replevin action with joint title holders involves a comparison of the superiority and inferiority of competing rights to possess the animal" and his reliance on this court's decision in *Angrave* as support for this proposition. In other words, before the hearing even began, the plaintiff embraced and urged the court to follow the precise language from *Angrave* that he now claims on appeal improperly guided the court's analysis because, he now claims, it is dicta.[13] See, e.g., *Gladstein* v. *Goldfield*, 163 Conn. App. 579, 584, 137 A.3d 60 (2016) (deeming unreviewable as induced error plaintiff's claim on appeal that definition advanced by all parties at trial and embraced by court was incorrect), appeal dismissed, 325 Conn. 418, 159 A.3d 661 (2017).

Moreover, the plaintiff's counsel specifically questioned the plaintiff about why he thought his interest in Buzz was superior to that of the defendant and he testified that it was because he solely cared for and/or had possession of Buzz for "more days" than the defendant did. To this end, when the court directly asked the plaintiff's counsel during her rebuttal closing argument "[w]hat about the superiority of [possessory interest] claim," she did not advise the court that it was wrong to

to that which is clearly implied as well as to that which is expressed." (Internal quotation marks omitted.)).

[13]The record reflects that the court specifically referenced the prehearing memorandum or memoranda on more than one occasion throughout the hearing.

consider it but, rather, responded, "I think [the plaintiff] can establish superiority . . . ."[14]

It is well settled that "[a] party cannot take a path at trial and change tactics on appeal. . . . Both our Supreme Court and this court have stated the principle that, when a party abandons a claim or argument before the trial court, that party waives the right to appellate review of such claim because a contrary conclusion would result in an ambush of the trial court. . . . [W]aiver is [t]he voluntary relinquishment or abandonment—express or implied—of a legal right or notice. . . . In determining waiver, the conduct of the parties is of great importance. . . . [W]aiver may be effected by action of counsel. . . . *When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal. . . .* Thus, [w]aiver . . . involves the idea of assent, and assent is an act of understanding. . . .

---

[14]We note that, after the plaintiff's counsel made that statement, the court asked whether it was her "position that the [prejudgment remedy] lies if [the plaintiff] establishes that his possessory interest is equal to that of [the defendant] . . . or does he have to establish, at least as a probable cause standard, that his will be the superior interest at the end of the day?" The plaintiff's counsel responded: "I don't think . . . he necessarily has to establish a superior interest. I think that becomes the standard for who ultimately keeps the dog at trial, who had the superior interest."

A prejudgment remedy, however, would only be available to the plaintiff on a finding by the court that there was probable cause that a judgment of replevin would be rendered in his favor after trial. See *Johnson* v. *Vita Built, LLC*, supra, 217 Conn. App. 83. Thus, although the *burden of proof* for purposes of securing a prejudgment remedy of replevin differs from the *burden of proof* for securing a judgment of replevin following a trial, the "*standard*," or what must be established or proven both at a prejudgment remedy hearing and at a trial, is the same. Id.

Indeed, the court further inquired: "Well . . . don't you have to establish probable cause that [the plaintiff] will prevail on the merits?" The plaintiff's counsel responded that she "believe[d] we have." However, when the court then asked whether, to prevail on the merits, the plaintiff had to demonstrate a superiority of interest, the plaintiff's counsel neither embraced nor disavowed that notion. Rather, she merely averred that "I believe that we have to establish those four prongs [set forth in *Cornelio*], and two of them have been conflated. The immediate right to possession . . . has been sort of conflated here as if it means something else."

"Moreover, [t]his court routinely has held that it will not afford review of claims of error when they have been induced. . . . As we previously have explained, the term induced error, or invited error, has been defined as [a]n error that a party cannot complain of on appeal because the party, through conduct, encouraged or prompted the trial court to make the [alleged] erroneous ruling. . . . It is well established that a party who induces an error cannot be heard to later complain about that error. . . . This principle bars appellate review of induced nonconstitutional error and induced constitutional error. . . . The invited error doctrine rests [on principles] of fairness, both to the trial court and to the opposing party. . . .

"Here, whether we call it induced error, encouraged error, waiver, or abandonment, the result—that the [plaintiff's] claim is unreviewable—is the same." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Martone*, 160 Conn. App. 315, 327–28, 125 A.3d 590, cert. denied, 320 Conn. 904, 127 A.3d 187 (2015). In this case, our review of the entirety of the record reveals that the question as to who had the superior possessory interest in Buzz was the focal point of the proceedings and leads us to conclude that the plaintiff prompted the error he now complains about on appeal by **(1)** suggesting to the court, in his prehearing memorandum, that this question was germane to the analysis, **(2)** presenting evidence regarding and attempting to prove that his interest in Buzz was superior to the defendant's, and **(3)** arguing, through counsel, that he had done so.

We acknowledge that the plaintiff retained appellate counsel after the court issued its decision denying his application and that it was his appellate counsel, not his trial counsel, who filed this appeal on his behalf. It is well established, however, that "[a]n appellant cannot create a reviewable claim because his appellate counsel disagrees with the strategy of his trial counsel." (Internal quotation marks omitted.) *State* v. *Colon*, 272 Conn. 106, 246, 864 A.2d 666 (2004), cert. denied, 546 U.S. 848, 126 S. Ct. 102, 163 L. Ed. 2d 116 (2005). We therefore

conclude that the plaintiff's claim that the court improperly determined that to establish under the probable cause standard that he had the right to immediate possession of Buzz, which is the third element of replevin, he was required to establish that his possessory interest in Buzz was superior to that of the defendant is unreviewable.[15]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[15]In reaching this conclusion, we acknowledge that the defendant has not claimed that this court should not review the plaintiff's claim that the trial court improperly determined that to prove that he had the right to immediate possession of Buzz he had to establish that his possessory interest in Buzz was superior to that of the defendant. We conclude, however, that it would be manifestly unjust to both the defendant and the trial court to permit the plaintiff to pursue this claim on appeal. See *Overley* v. *Overley*, 209 Conn. App. 504, 511–12, 268 A.3d 691 (2021), cert. denied, 343 Conn. 901, 272 A.3d 657 (2022). "We will not promote a Kafkaesque academic test by which [a trial judge] may be determined on appeal to have failed because of questions never asked of [him] or issues never *clearly presented* to [him]." (Emphasis added; internal quotation marks omitted.) Id., 512.